USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __6/15/2020__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------X
**J&J SPORTS PRODUCTIONS INC.**,

      Plaintiff,

                                    19-CV-08440 (ALC)

    - against -                          **ORDER**

**VASQUEZ, ET AL.,**

      Defendants.
----------------------------------------X

      On September 11, 2019, Plaintiff J&J Sports Productions Inc. filed a complaint alleging that Defendants violated Title 47 U.S.C. Sections 605 and 553 by unauthorized interception of the satellite communication of a boxing program. ECF No. 1. Plaintiff served the complaint on Ms. Vasquez on October 8, 2019 and on Defendant Restaurant on October 15, 2019. ECF Nos. 8, 9. To date, Defendants have not answered the complaint or otherwise appeared in this matter. On January 27, 2020, the Clerk of Court entered Certificates of Default as to Defendants. ECF Nos. 13, 14.

      On April 1, 2020, Plaintiff moved for default judgment, ECF No. 24, which motion is now before the Court. Though Plaintiff's Complaint claims violations of both Sections 553 and 605, Plaintiff seeks damages only under Section 605. Section 605(a) prohibits a broad range of unauthorized interception or receipt of communications, including satellite communications like the one at issue here. The terms of Section 605(e)(3)(C)(i)(II) allow for statutory damages ranging from $1,000.00 to $10,000.00 for each violation. Section 605(e)(3)(C)(ii) allows for enhanced damages if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."

1

When a defendant defaults, a court must determine whether the plaintiff has established liability as a matter of law, while accepting "plaintiff's factual allegations as true and draw[ing] all reasonable inferences in its favor". *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Here, Plaintiff has submitted affidavits and documents showing that it had the right to sublicense the program; that the program was encrypted and made available only to sublicensees; that an investigator hired by Plaintiff for the purpose of detecting unauthorized broadcasts observed the program being shown in Defendant Restaurant on one television screen while 13 patrons were present; and that Defendant Restaurant advertised its showing of the fight. In light of this evidence, the Court concludes that Plaintiff has established that Defendants violated Section 605. The fact that the program was encrypted, together with Defendants' advertising that the restaurant would show the fight, indicates that the violation was done willfully and for the purposes of direct or indirect commercial advantage or private financial gain.

While Defendants' "default is deemed to constitute a concession to all well-pleaded allegations of liability", "it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974); Fed. R. Civ. P. 8(d)). "There must be an evidentiary basis for the damages sought by plaintiff", which a court may determine "upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

First, statutory damages pursuant to Section 605(e)(3)(C)(i)(II). Courts in the Second Circuit have generally calculated these damages as "the flat fee that Plaintiff would have charged Defendants to air the programming at their establishment or the sum of what each individual who viewed the event at Defendants' establishment would have paid to view it at home". *J & J Sports*

*Prods., Inc. v. Sugar Cafe Inc.*, No. 17-CV-5350 (RA), 2018 WL 324266, at *1 (S.D.N.Y. Jan. 5, 2018); *see also J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, 2014 WL 4467774, at *7 (E.D.N.Y. Sept. 9, 2014) (collecting cases). Had Defendants entered a sublicense with Plaintiff, the fee would have been $1800. Because the record does not indicate what the at-home rate would have been, it is not possible to calculate whether damages based on that amount would be greater. Plaintiff requests $5400 in statutory damages, citing judgments from district courts in other circuits that have applied multipliers to the license fee. The Court declines to adopt that approach. Consistent with the practice of other district courts in the Second Circuit, the Court ORDERS $1800 in statutory damages.

In light of the conclusion that Defendants' violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the Court also considers enhanced damages pursuant to Section 605(e)(3)(C)(ii). This amount must be "sufficient to compensate the plaintiff and also deter the defendant[ ] and others from further violations." *See Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 343 (S.D.N.Y. 2009). However, the scale of the violation merits a lower award than Plaintiff's requested $16,2000. There were 13 people at the restaurant on the night in question and no entry fee was charged. It is therefore unlikely that Defendants made considerable profits from the violation. The Court therefore ORDERS $5000 in enhanced damages, which it concludes provides adequate deterrence and compensation.

Section 605 also provides for the award of costs, including reasonable attorneys' fees, to a prevailing party. 47 U.S.C.A. § 605(e)(3)(B)(iii). Plaintiff has requested 30 days to make a submission as to those costs. That request is GRANTED.

Plaintiff is directed to serve this order on Defendants by June 22, 2020.

**SO ORDERED.**

**Dated:**     **June 15, 2020**
              **New York, New York**

                                            **ANDREW L. CARTER, JR.**
                                            **United States District Judge**